IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| STANDARD INSURANCE COMPANY, | * | |
| Plaintiff, | * | |
| v. | * | |
| | | Civil No. L-08-227 |
| FRANK E. DAY | * | |
| Defendant. | * | |
| | * | |

\*\*\*\*\*\*

**<u>MEMORANDUM</u>**

This is a declaratory judgment action. Standard Insurance Company ("Standard") seeks a declaration that it properly denied coverage to defendant Frank E. Day ("Day") under a specific provision of a group term life insurance policy ("Policy") sponsored by the State of Maryland. The facts are clearly set out in the parties' briefs and need not be repeated here. The central question is whether the Policy language clearly and unambiguously resolves the coverage dispute. Before reaching this question, the Court must address Day's challenge to the Court's jurisdiction over this matter.

I.   **SUBJECT MATTER JURISDICTION**

   A.   **Diversity Jurisdiction Under 28 U.S.C. § 1332**

Standard filed a declaratory judgment action in this Court under the authority of 28 U.S.C. § 1332. Federal district courts "have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000" and is between citizens of different states. 28 U.S.C. § 1332. In federal court, the amount in controversy, measured to a legal certainty, is determined as of the time the complaint is filed. <u>Shanaghan v. Cahill</u>, 58 F.3d 106,

112 (4th Cir. 1995); Ecology Services, Inc. v. Granturk Equipment Inc., 443 F. Supp. 2d 756, 764 (D. Md. 2006). When a plaintiff seeks declaratory relief, the amount in controversy for purposes of § 1332 is the value of the object of the litigation. Hunt v. Washington State Apple Advertising Commission, 432 U.S. 333, 346 (1977).

The United States Court of Appeals for the Fourth Circuit has stated that if subsequent events reduce the amount in controversy, the district court has discretion whether to maintain jurisdiction over the remainder of the case. Shanaghan, 58 F.3d at 112; Ecology Services, Inc., 443 F. Supp. 2d at 764. In evaluating whether to do so, the court should consider five factors:

> (1) an evaluation of the convenience and fairness to both parties if the case is kept or dismissed, taking into consideration the interests of judicial economy; (2) whether the amount claimed in the complaint was made in good faith, or whether the plaintiff was consciously relying on flimsy grounds to file in federal court; (3) whether the state statute of limitations would bar refiling the action in state court if dismissed; (4) the amount of time and energy that the federal court already has expended in connection with the case, and whether it might be more efficient to just keep it; (5) whether the case presents some significant issue of state law best decided in state court.

Peiffer v. King Pontiac Buick GMC, Inc., 105 F. Supp. 2d 470, 472–73 (D. Md. 2000) (citing Shanaghan, 58 F.3d at 112)).

**B.      Analysis**

Standard filed a complaint for declaratory judgment alleging a potential liability to five defendants of $105,000, notwithstanding costs and fees. In its July 24, 2008 Memorandum, this Court determined that Standard satisfied the requirements of § 1332, including the requisite

amount in controversy, and denied defendants' motion to dismiss for lack of subject matter jurisdiction. Paper No. 23. At present, Day is the only remaining defendant in the case.

As represented in the complaint, Standard's potential liability to Day is $20,000. Despite this figure, application of the factors developed by the Fourth Circuit indicates that it is appropriate for this Court to retain jurisdiction over this case. The original amount claimed in the complaint was not made in bad faith. This case has been pending before the Court for more than two years, during which time the Court has decided a variety of motions and conducted a settlement conference. The parties have also briefed the merits of summary judgment. Finally, although this case presents issues of state contract and insurance law, it does not appear that the issues are particularly significant.[1] This Court is, therefore, able to address the merits of this case. Accordingly, this Court, in the exercise of its discretion, will retain jurisdiction over this case, even though subsequent events have reduced the amount in controversy below $75,000.

## II.   SUMMARY JUDGMENT

### A.   Standard of Review

The Court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986); see also Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987) (recognizing that trial judges have "an affirmative obligation" to prevent factually unsupported claims and defenses

---

[1] Only the third factor weighs against retaining jurisdiction as the statute of limitations has not yet run. Standard could bring this action in state court under the Maryland Uniform Declaratory Judgments Act, Cts. & Jud. Proc. § 3-401 et seq. Under the insurance contract at issue, an insured has three years from the date proof of loss is filed or should have been filed to bring an action against the insurer. Here, Day filed his proof of loss on June 12, 2007. Mr. Day could still bring an action in contract against Standard in state court. Only after this statute of limitations period runs will Standard's declaratory judgment action be considered moot.

from proceeding to trial). Nevertheless, in determining whether there is a genuine issue of material fact, the Court views the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. Pulliam Inv. Co. v. Cameo Properties, 810 F.2d 1282, 1286 (4th Cir. 1987).

**B.  Analysis**

Under Maryland law, an insurance contract is interpreted using the same rules of construction that apply to contracts generally. When interpreting a contract, Maryland courts will give the words their "customary, ordinary, and accepted meaning." Cole v. State Farm Mut. Ins. Co., 753 A.2d 533, 537 (Md. 2000).

If the language of an insurance policy is ambiguous (susceptible of two reasonable interpretations) then a jury must resolve the dispute. If, however, the language is clear and unambiguous, the court will declare that meaning. Id. In other words, when a contract is unambiguous, there is no dispute of fact for a jury to decide and the court interprets the language "as a matter of law."

In the instant case, the terms of the Policy are unambiguous. A husband and wife who are both active State employees and/or retirees are not entitled to duplicate coverage. Mr. and Mrs. Day were both employees/retirees of the State of Maryland and they both were Plan "Members." Accordingly, neither Mr. Day nor Mrs. Day was eligible to obtain duplicate coverage under each other's policy as "Dependants." Despite the prohibition written into the Duplicate Coverage Provision, Mrs. Day was improperly covered both as a Member and as a "dependent" of Mr. Day.

The "Duplicate Coverage Provision" provides that "[a] Member may not be insured as both a Member and a Dependent." Paper No. 46, Exhibit 1-A, p. 10. The Summary of General Benefits, which was provided to participants, reinforces this point:

> **Important—Duplicate Coverage Prohibited**
> A husband and wife who are both active State employees and/or retirees may not have duplicative coverage under any plan by covering each other under separate enrollments. Also, children of two State employees and/or retirees may not be covered twice under both parents' plans. It is the employee's/retiree's responsibility to make sure that they or their dependents do not have duplicate State coverage.

Paper No. 46, Exhibit 1-B, p. 6.

Standard accepted premium payments for the duplicate coverage. That fact, however, does not estop it from denying coverage. As the record reflects, Standard receives lump sum premium payments for group coverage from the State of Maryland. The State does not provide a breakdown of premiums paid by individual participants. Standard, therefore, did not know that premiums were being remitted for Mrs. Day both as a Member and as Mr. Day's dependent.

Standard did not discover the improper enrollment until Mr. Day submitted a claim for Dependent's life benefits. Standard promptly refunded the erroneously paid premiums. Estoppel will not lie because Standard is not culpable of any inequitable conduct upon which the Days reasonably relied to their detriment. Miller v. Insurance Comm'r, 521 A.2d 761, 769 (Md. Ct. Spec. App. 1987).

It also cannot be said that Standard waived its right to deny coverage. Waiver is the intentional relinquishment of a known right. When Standard accepted premiums from the State, it had no way of knowing that Mrs. Day was improperly enrolled as a dependent of her husband. Hence, there can be no waiver. Moreover, neither estoppel nor waiver can be used to extend

coverage beyond what was originally intended.  Shepard v. Keystone Ins. Co., 743 F. Supp. 429, 433 (D. Md. 1990).

Accordingly, the Court, by separate order, will direct the Clerk to enter judgment for Standard and close the case.

It is so ORDERED this 30th day of March, 2010.

                                                  /s/  
                                    Benson Everett Legg  
                                    United States District Judge